J. C. GRIMES AND ANNIE G. GRIMES, ADMINISTRATORS OF W. T. GRIMES, DECEASED, v. CAROLINA COACH COMPANY.

(Filed 30 November, 1932.)

1. **Highways B a — Failure to drive on right side of highway must proximately cause injury to be actionable negligence.**

    The violation of the statute requiring drivers of motor vehicles to drive on the right side of the highway is negligence *per se,* but is not actionable unless the proximate cause of injury. C. S., 2621(51).

2. **Highways B n—Evidence held insufficient to be submitted to jury in action for damages from negligent driving on highway.**

    The evidence tended to show that the car driven by A. had pulled the car driven by G. out of a ditch at the side of a much traveled highway at an intersection of another road, that a bus was seen approaching and that A. drove his car into the intersecting road to let the bus pass, leaving G.'s car standing across the highway, facing toward the intersecting road and G. standing in the highway, that after a collision the bus was found with its right wheels in the ditch on the right of the highway facing the direction in which it was traveling, and that G. was found, mortally wounded, on the hard surface on the other side of the highway, and his car found on the same side with its rear wheels in the ditch, that the highway was straight and unobstructed for a distance of nine hundred feet in the direction from which the bus approached, and that it was eighteen feet wide and that G.'s car was fourteen feet long, that large tire tracks similar to the ones made by the bus were found several feet over the center of the highway and had swerved to the right at the point of the collision, but that other vehicles making similar tracks constantly

used the highway, and there was no evidence as to whether the lights on G.'s car were burning or whether the bus hit him or his car: *Held*, in an action by G.'s administrator to recover damages for his wrongful death the evidence was insufficient to be submitted to the jury on the issue of the bus company's negligence in failing to keep to the right of the highway and to keep a proper lookout.

**3. Negligence D b—Burden is on plaintiff to establish that defendant's negligence proximately caused injury in suit.**

In a negligent personal injury action the burden is on the plaintiff to show that the injury was proximately caused by the defendant's negligence, and evidence raising merely a conjecture as to negligence and proximate cause is insufficient to be submitted to the jury.

CIVIL ACTION, before *Harding, J.,* at September Civil Term, 1932, of DAVIDSON.

This is an action for damages for the wrongful death of W. T. Grimes due to the alleged negligence of the defendant. On the night of 4 July, 1931, between Salisbury and Lexington, at a point on Route No. 10, known as the airport road, plaintiff's intestate was killed. Highway No. 10, at the intersection of the airport road, runs approximately north and south. The pavement on the main highway is eighteen feet wide, and on each side thereof are dirt shoulders, approximately nine feet in width. Trench ditches border the shoulders on each side of the highway. Rain was falling and the pavement was wet and slick.

A traveler, named Meeks, was driving a Ford touring car from Salisbury to Lexington, that is from west to east along No. 10. In the car with him as passengers were his wife and three children, a man named McKinney, and a Mrs. Trant and her baby. The narrative of the traveler is substantially as follows: "When I got around this curve . . . I noticed head lights that seemed to be from an automobile directed across the highway or at an angle toward Charlotte, and at about the left front fender was a man waiving his arm, and I pulled up to where he was and he asked me would I give him a lift and said he had slipped into the side ditch." The man referred to by Meeks was the plaintiff's intestate, and at the time the rear wheels of his Buick car were in the ditch, bordering the shoulder on the south side of Highway No. 10 or on the right-hand side of the road as you face Lexington. The car was approximately fourteen feet in length. Plaintiff's intestate had a towing chain in his hand and Meeks consented to pull the car of plaintiff's intestate out of the ditch. Meeks thereupon headed his car to the north up the airport road or across the north side of No. 10, said north side being the right-hand side of the highway as you face west toward Salisbury. Meeks then backed up toward the car of plain-

tiff's intestate. Continuing his narrative, Meeks said: "He went to hook the chain on our Ford and I asked him was he hooking it to the housing and he said 'No.' So after he hitched the chain he got in his car and started the motor and I went to pulling and I think my motor choked once. About the third time we pulled I felt the slack from his car and I realized he was out of the ditch. He hollored and told me that was all right, so I stopped and heard him unhitching the chain from our car. He then came up to where I could talk to him over my left shoulder and asked me what he owed me. I told him not a cent in the world. He then thanked me and about this time McKinney says, 'look out, here comes a bus.' . . . I think he advised me the second time before I moved and then I pulled up in the airport road . . . out of the way of the bus, so the bus could pass, and while we were waiting, motor running and lights burning, I heard the crash, sounded like glass . . . and I looked around to my left and saw the bus going over there toward the side ditch where it stopped. I got out of the Ford and about that time I noticed some men getting out of the bus and we all went over there where this man was lying in a puddle of water along the edge of the highway. He was lying some feet from his car toward Salisbury . . . on the right-hand side of the highway going toward Lexington about two feet on the hard surface." Soon an ambulance, in response to call, came to the scene, picked up plaintiff's intestate, carried him to a hospital in Lexington, where he died, about two minutes after reaching the hospital.

From the intersection of the airport road to a point 927 feet therefrom toward Lexington the highway is straight and the view unobstructed. A bus, owned by the defendant, was proceeding westward from Lexington toward Salisbury, and therefore traveling along the north side of Highway No. 10, or the right-hand side as you face Salisbury. A witness for plaintiff passed the car of plaintiff's intestate while it was in the ditch. He said that he "drove to the other side of the road to my left on the road to get around the car and pass the car. . . . I met the bus, I would say, around four hundred yards toward Lexington from the intersection of the airport road . . . we were traveling in opposite directions, . . . and I pulled off the hard surface on to the shoulder of the road and the bus passed me while I was on the shoulder. . . . In my opinion the bus was traveling from thirty-five to forty miles an hour. . . . When I said I went off on the shoulder I meant my right wheel went off and my left wheel stayed on. My wheel went only slightly off the hard surface. . . . I am not positive I pulled off on the shoulder."

There was evidence tending to show that there were large wheel tracks approaching the scene of the accident, extending over the center of the line of the highway about three and a half feet south of the center line as you face Salisbury, and that these tracks, near the point of collision, turned abruptly to the right on the north side of the highway and into the ditch on said north side or right-hand side of the highway facing Salisbury, and that after the collision the bus was found with the right wheels in this ditch. There was other evidence tending to show that trucks and automobiles, including an ambulance, were present at the scene shortly after the collision.

Motions of nonsuit were duly made and sustained at the conclusion of the evidence, from which judgment plaintiff appealed.

*Don A. Walser, Phillips & Bower and Martin, Brinkley & Stoner for plaintiffs.*

*Willis Smith and Spruill & Olive for defendant.*

BROGDEN, J. The plaintiff bases the right to recover upon two aspects of negligence, to wit:

(a) That the bus owned and operated by the defendant was traveling westward near the center of the road with its left wheels over the center line of the highway about three and one half or four feet, thus placing the bus partially on the wrong side of the road and that such negligent operation was the proximate cause of the injury complained of;

(b) That the driver of the bus was not maintaining a careful and proper lookout, for that the road was straight for a distance of approximately 900 feet.

C. S., 2621(51) provides that "upon all highways of sufficient width . . . the driver of a vehicle shall drive the same upon the right half of the highway," etc. Undoubtedly a violation of the statute *is* negligence *per se*, but such negligence is not actionable unless there is a causal relation between the breach and the injury. *Burke v. Coach Co.,* 198 N. C., 8, 150 S. E., 636.

Plaintiff offered evidence to the effect that there were large tire tracks at the scene of the killing, extending to the left of the center of the road and that these tracks apparently turned to the right toward the ditch on the right side of the road as you face westward, and the right wheels of the bus were in the ditch on its right after the collision. Hence, it is inferred that the bus was traveling on the wrong side of the road.

The evidence discloses that Highway Number 10 is one of the main arteries of travel through the State, and that trucks of various types and automobiles use this road at all hours of the day and night. A

GRIMES *v.* COACH CO.

witness for plaintiff said: "It (No. 10) is a heavily traveled highway. It is heavily traveled by freight trucks at night. Freight trucks use substantially the same tires that buses use." Consequently the track evidence is vague and uncertain, and is susceptible of highly speculative interpretation. Where was the plaintiff's intestate when the fatal blow was struck? What struck him? Did the bus strike him or did the bus strike his car, standing approximately across the road? Meeks, a witness for plaintiff, said: "The direction I had pulled him from the position of my car, this car was crossways of the hard surface road and was leading in the airport road, and that was the direction we were pulling."

Were the lights burning on the car of plaintiff's intestate at the time of the impact? Meeks said that his attention was not directed to the lights before the crash, but "after the crash when I got out and came back to where his car was standing there were no lights on it." Were the lights extinguished by the blow? Nobody knows or undertakes to testify with reference thereto.

In the final analysis the evidence flashes upon the screen substantially the following picture: A large passenger bus is traveling in the night time from Lexington to Salisbury, that is from east to west, along Number 10. The driver swings into a straight stretch of approximately 900 feet. Ahead of him is a lighted Ford touring car across the road. He blows his horn and the Ford car pulls across the highway into an intersecting road known as the airport road, on the bus driver's right. But the car of plaintiff's intestate is also "cross-ways" the highway, manifestly near the center. The evidence does not disclose whether or not this car was lighted. The plaintiff's intestate is somewhere in the road near his car. There is a crash. After the crash the right wheels of the bus are in the ditch on the right side of the road, facing west, and the rear wheels of the car of plaintiff's intestate are in the ditch on the right side of the road facing east. The body of the fatally injured man is found on the right side of the hard surface facing east.

The law imposes upon the plaintiff the burden of offering evidence tending to show that the injury was proximately caused by the negligence of the defendant.

In the present case, deductions, inferences, theories and hypotheses rise and run with the shifting turns of interpretation, but proof of negligence must rest upon a more solid foundation than bare conjecture.

Therefore, the court is of the opinion that the ruling of the trial judge was correct.

Affirmed.