R. A. BENTHALL, D/B/A BENTHALL STOCKYARD v. WASHINGTON HOG MARKET, INCORPORATED, AND THE BANK OF WASHINGTON.

(Filed 10 October 1962.)

**Banks and Banking § 9—**    **Evidence held not to show negligence or damages in action against bank failing to return promptly unpaid draft.**

In a trial by the court under agreement of the parties, evidence and stipulations to the effect that the drawee's bank held a draft for some six business days before returning the draft unpaid, that the draft was deposited for collection, that the bank could not honor the draft without specific authority from the drawee, that the bank requested such authority and the drawee declined to give it, and that the drawer had accepted the proceeds of a number of other drafts which had been held by the bank for like periods of time before the drawee had authorized payment, without evidence that the drawer would have been able to collect the amount from the drawee had the draft been returned promptly, *held* to support judgment dismissing the action, plaintiff having failed to show either negligence or damages, both of which are essential to support recovery.

RODMAN, J., took no part in the hearing and disposition of this case.

APPEAL by plaintiff from *Morris, J.,* April 1962 Term, NORTHAMPTON Superior Court.

The plaintiff, a resident of Northampton County, instituted this civil action to recover $3,346.43 for hogs sold and delivered to the Washington Hog Market, Inc. "For several years the plaintiff has regularly sold hogs to the defendant Washington Hog Market, Inc., . . . the manner of payment agreed upon . . . was for the plaintiff to

draw a sight draft on the Washington Hog Market, Inc., directed to The Bank of Washington, Washington, North Carolina." On January 18, 1960, the plaintiff at Rich Square, North Carolina, made a sale of hogs to the Washington Hog Market and in accordance with the prior custom and understanding drew and deposited in the Bank of Rich Square the following sight draft:

"$3,346.43                                    18 Jan. 1960
    On sight . . . pay to the order of The Bank of
Rich Square . . . $3,346.43 — — — DOLLARS
    Value received and charge the same to account of
Washington Hog Market, Inc.
To Bank of Washington, Washington, N. C.
No.                            (signed) R. A. Benthall."

The Bank of Rich Square credited the plaintiff's account with the amount of the draft and forwarded it through its customary channels to the Bank of Washington which received it on January 20, 1960. The Bank of Washington notified the Hog Market in accordance with the custom but did not receive authority to pay the draft. On January 27, 1960, pursuant to a tracer request, the defendant returned the draft through channels to the Bank of Rich Square which charged it back to the plaintiff's account. During the six business days the defendant Bank held the draft the defendant Hog Market had on deposit a daily balance between $10,000 and $30,000. However, during this same period the Bank held for collection other customers' drafts in amounts between $99,000 and $129,000. Actually, during the time here involved the Washington Hog Market, Inc., was insolvent and subsequently was adjudged a bankrupt. The defendant Bank did not have knowledge of this insolvency.

The plaintiff obtained judgment by default final against the Hog Market. He seeks to obtain judgment against the defendant Bank upon the ground it was negligent in retaining the draft for an unreasonable length of time but should have returned it promptly.

The Bank defended upon the ground the draft was forwarded to it for collection and it proceeded according to the course of dealing long established between it and the plaintiff. The Bank specifically alleged, and the court found, that between August 6, 1959, and January 20, 1960, the appellant drew 15 similar drafts on the Washington Hog Market. One was collected after 4 days, 3 after 5, one after 6, 5 after 7, 2 after 8, one after 11, and 2 after 13 days. The plaintiff acquiesced in the method the appellee adopted to collect these drafts and accepted without objection or question the successful handling of these drafts. In fact, one of plaintiff's drafts for $2,299.49 was received on January

14, 1960, payment was authorized on January 27, 1960, the very day the draft in suit was returned.

The parties waived jury trial. The court found as a fact (1) the appellee was not negligent; (2) the plaintiff was not damaged; (3) the plaintiff "by . . . the custom of dealing with Washington Hog Market and manner of handling drafts . . . is now estopped to assert negligence." The court concluded the defendant Bank was not indebted to the plaintiff. From the judgment dismissing the action, the plaintiff appealed.

*Martin & Flythe, by Joseph J. Flythe, for plaintiff, appellant.*

*Gay, Midyette & Turner; Rodman & Rodman, for defendant appellee.*

HIGGINS, J. In *Trust Co. v. Bank,* 255 N.C. 205, 120 S.E. 2d 830, this Court reviewed a series of transactions involving drafts of other parties directed to the Bank of Washington to be charged to the account of the Washington Hog Market, Inc. The dates of the drafts and the manner of drawing and handling them were essentially the same as in this case. However, in *Trust Company* the rights and liabilities of forwarding banks were involved. The many pertinent cases with respect thereto are cited and discussed in the Court's opinion and in the dissent.

In the instant case, however, only the rights of the plaintiff (the drawer of the draft) and the Bank of Washington, to which it was sent for collection, are involved. The plaintiff alleged and the parties stipulated the draft was for collection. It is conceded the defendant Bank could not honor the draft without specific authority from the Hog Market. The Bank requested such authority. The Hog Market declined to give it.

The court determined the evidence failed to show either negligence on the part of the Bank or damages to the plaintiff. The court did find the evidence showed plaintiff had acquiesced in and benefited by the Bank's method of collecting its drafts on 15 prior occasions without complaint or objection. Upon these bases the court entered judgment dismissing the action.

The burden was on the plaintiff to show both negligence and damages. *Wilson v. Geigy,* 236 N.C. 566, 73 S.E. 2d 487. Failure to show either is fatal. There is neither finding nor evidence the plaintiff's chances for collection were jeopardized during the six business days the bank held the draft. As between the plaintiff and the Hog Market, the draft was nothing more than a creditor's claim. "The draft procedure was adopted as a method of collecting the debt." *Trust Co. v.*

*Bank, supra.* The differences of opinion in *Trust Co.* arose over the question whether forwarding banks, as among themselves, treated the drafts as "cash" or "collection" items. Here the plaintiff alleged and the parties stipulated the draft was for collection.

We have examined and found without error all exceptive assignments which are presented in accordance with appellate procedure. Rule 19(3), Rules of Practice in the Supreme Court, 254 N.C. 797; *Darden v. Bone,* 254 N.C. 599, 119 S.E. 2d 634; *Nichols v. McFarland,* 249 N.C. 125, 105 S.E. 2d 294. The evidence was ample to support the findings of fact which in turn fully sustain the judgment. In the trial, we find no error and the judgment is

Affirmed.

RODMAN, J., took no part in the hearing and disposition of this case.