ALICE B. ANDERSON, ADMINISTRATRIX C. T. A. OF THE ESTATE OF CHARLES R. BIGGS, SR., DECEASED, v. ROBERT G. WEBB, ADMINISTRATOR OF THE ESTATE OF CULLEN DANIEL NICHOLS, DECEASED, AND CULLEN SIMS NICHOLS.

(Filed 6 July, 1966.)

**1. Automobiles § 15—**

The violation of G.S. 20-146 and G.S. 20-148, requiring the drivers of vehicles proceeding in opposite directions to stay on the right side of the highway in passing, is negligence *per se*, and when an accident results as a proximate cause of the failure of one of the drivers to stay on his right side of the highway, such failure constitutes actionable negligence.

**2. Automobiles § 41c—**

In an action to recover damages resulting from a head-on collision between a vehicle traveling east and a vehicle traveling west on a highway, evidence that skid marks leading to the vehicle which had been traveling east were seen on the south side of the highway, and that all the debris on the highway was found on the south side thereof, and that the vehicles, locked by the force of the collision, were both on the south side of the highway, permits the reasonable inference that the accident

proximately resulted from the failure of the driver of the vehicle traveling west to stay on his right side of the highway. G.S. 20-146, G.S. 20-148.

MOORE, J., not sitting.

APPEAL by plaintiff from *Bone, E.J.*, November 22, 1965 Regular Civil Session of WILSON.

Action for wrongful death.

Plaintiff's intestate, Charles R. Biggs (aged 47), was killed about 11:30 a.m. on September 15, 1963, at a point east of Sims on U. S. Highway No. 264. He and his wife died when the 1962 Valiant which he was operating collided with a 1963 Chevrolet, owned by defendant Cullen Sims Nichols and being operated by his son, Cullen "Danny" Nichols (aged 16), the intestate of defendant Webb. Plaintiff alleges: Immediately preceding the collision, Biggs was traveling in an easterly direction on No. 264. Nichols, traveling west at an excessive rate of speed and without keeping a proper lookout, lost control of his vehicle, which crossed the center line of the highway, and collided with the Biggs automobile. Danny Nichols also died as a result of the collision.

Defendants filed separate answers. Each denied every allegation of the complaint except those with reference to the residence of the parties and the ownership of the vehicles. Defendant Webb, as administrator of Cullen Daniel Nichols, filed a counterclaim in which he sought to recover damages for the death of his intestate. Neither of the answers nor the counterclaim discloses the direction in which Danny Nichols was traveling. His administrator merely alleges that the collision occurred on Highway No. 264 at a point east of the town of Sims, and that it was proximately caused by the negligence of Biggs, who had operated his automobile at an excessive rate of speed, without keeping a proper lookout, without having it under control, and to his left of the center of the highway.

Plaintiff's evidence tends to show: On Sunday, September 15, 1963, about 8:00 a.m., Mr. and Mrs. Biggs left Greensboro to drive to Wilson in Mr. Biggs' Valiant automobile. Mr. Biggs was in good health. About 11:00 a.m., Danny Nichols, driving defendant Nichols' Chevrolet, left the home of Willard Joyner on Rural Road 1001 in Wilson County to return to his home in Sims. He drove southwardly toward Lamm's Crossroads, where Highways No. 1001 and No. 264 intersect. From there, Sims is approximately three miles west on No. 264. The Valiant and the Chevrolet collided at a point about 1.2 miles east of Sims. There were no eyewitnesses to the collision. Highway Patrolman Charles N. Lee was notified of the wreck at 11:30 a.m.; he arrived at the scene ten minutes later.

It was raining "a good rain," and the road was very wet. At the place of the collision, No. 264 is a two-lane highway which runs east and west. The road is straight; the pavement is 24 feet wide and the south shoulder 6-10 feet wide. East of the scene (distance undisclosed) there is a sharp curve to the north. The speed limit for the area was 60 MPH. Patrolman Lee found both cars on the south side of the road. The Valiant was on the shoulder almost perpendicular to the pavement; its front end faced slightly to the northeast and was about even with the south edge of the pavement. The Chevrolet was headed in an easterly direction with its left wheels on the south edge of the pavement and its right wheels on the shoulder. A mark 10 feet long led from the right front wheel of the Chevrolet back in an easterly direction on the shoulder of the highway. Debris (batteries, pieces of metal, and dirt) was located on the shoulder and on the south edge of the pavement. No other debris was on the highway. The front of the Valiant was smashed; it had penetrated the right side of the Chevrolet which was almost demolished. A wrecker pulled the two vehicles apart.

Patrolman Lee testified that, in the course of his investigation, he made a careful search of the pavement east of the point of impact, and that he found no skid marks. Willard Joyner, from whose house Danny Nichols had departed 20-25 minutes before the collision, testified that he went to the scene in response to a telephone call. He approached the wrecked cars walking from the east. On the south side of the highway, in the lane for eastbound traffic, he saw 100 feet or more of skid marks which led directly to the Nichols Chevrolet. He described these marks as follows:

"(T)here was just kind of skid marks — a visible continuous skid mark. There was no rubber on the paved surface of the road, but it was somewhat more than water being brushed off. It wasn't any rubber there and it was somewhat more than the water being off. I did not see any rubber there. I am not sure how wide those marks that I saw were. I just saw visible marks. . . . I don't know if they were parallel tracks. I do know that I saw no rubber on the surface of the road."

At the conclusion of plaintiff's evidence, defendants' motion of nonsuit was overruled. Defendants then offered evidence which tended to show only that Danny Nichols was an attractive, healthy, industrious boy of good habits, and that he had been driving an automobile approximately 5½ months at the time of the accident.

At the close of all the evidence, defendants renewed their motion for judgment of nonsuit, and plaintiff moved the court to nonsuit the counterclaim. The judge allowed both motions, and plaintiff appealed.

*Hoyle, Boone, Dees & Johnson by J. Sam Johnson, Jr., for plaintiff appellant.*

*Gardner, Connor & Lee; Lucas, Rand, Rose & Morris by J. M. Reece for defendant appellees.*

SHARP, J. Considering the evidence in the light most favorable to plaintiff — as we are required to do in passing upon a motion for nonsuit, 4 Strong, N. C. Index, Trial § 21 (1961) — it is sufficient to establish that plaintiff's intestate Biggs was operating the Valiant in an easterly direction; that defendant's intestate Danny Nichols was driving west in the Chevrolet; and that Nichols, traveling to his left of the center of the highway, collided with the Biggs automobile in its lane of travel.

Plaintiff's theory of this case is that Danny Nichols, operating his vehicle at a speed greater than was reasonable and prudent considering the rain and wet pavement, lost control of his car on a sharp curve to his right and skidded 100 feet into the Biggs automobile on the south side of the road. The only evidence with reference to this curve is found in the testimony of the patrolman, who said: "The condition of the road to the east of this collision is a sharp curve. The curve goes to the north." The record, therefore, fails to disclose the distance from the curve to the point of collision. For this reason, defendant-appellee argues that plaintiff may not suggest that the curve had any relation to the accident. He further argues that the skidding of an automobile is not in itself evidence of negligence, *Hardee v. York*, 262 N.C. 237, 136 S.E. 2d 528; *Springs v. Doll*, 197 N.C. 240, 148 S.E. 251, and that there is no evidence that Danny Nichols, prior to skidding, was guilty of negligence which would have caused his car to skid. The flaw in this argument is that the skid marks, which the witness Joyner described, began on the *south* side of the highway in the Biggs' lane of travel. Thus, at the time Nichols began to skid, his vehicle was already upon the left half of the highway. The distance of the curve from the point of collision would not appear to be material, for it was Danny Nichols' duty to drive on his right half of the roadway at all times — on the straightway and, *a fortiori*, in a curve.

G.S. 20-146, except in certain situations not applicable here, provides that, "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway. . . ." G.S. 20-148 requires the drivers of vehicles proceeding in opposite directions to "pass each other to the right, each giving to the other at least one-half of the main-traveled portion of the roadway as nearly as possible." A violation of either of these statutes is negligence *per se*, and, when the proximate cause of injury, constitutes actionable

negligence. *McGinnis v. Robinson*, 258 N.C. 264, 128 S.E. 2d 608; *Bondurant v. Mastin*, 252 N.C. 190, 113 S.E. 2d 292; *Hobbs v. Coach Co.*, 225 N.C. 323, 34 S.E. 2d 211; *Grimes v. Coach Co.*, 203 N.C. 605, 166 S.E. 599.

When a plaintiff suing to recover damages for injuries sustained in a collision offers evidence tending to show that the collision occurred when the defendant was driving to his left of the center of the highway, such evidence makes out a *prima facie* case of actionable negligence. *Spiegelman v. Birch*, 204 Va. 96, 129 S.E. 2d 119; *Evansville Container Corp. v. McDonald*, 132 F. 2d 80 (6th Cir.); *Brown v. Head*, 158 So. 2d 442 (La. App.); *Miller v. Mullenix*, 227 Md. 229, 176 A. 2d 203. The defendant, of course, may rebut the inference arising from such evidence by showing that he was on the wrong side of the road from a cause other than his own negligence.

True, this case is a repetitious example of a collision in which there were no survivors and to which there were no eye witnesses, but this situation does not change the rule of law. Plaintiff, having made out a *prima facie* case of actionable negligence against defendant's intestate, was entitled to have the jury pass upon the evidence. The judgment of nonsuit is

Reversed.

MOORE, J., not sitting.