The ORANGE NATIONAL BANK OF ORANGE, Appellant,

v.

BANK OF LOUISIANA IN NEW ORLEANS, Appellee.

No. 24011.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1967.

Lynwood Sanders, Simmons, Sanders & Graves, Orange, Tex., Sidney D. Fazio, Baton Rouge, La., for appellant.

Charles E. Richards, Richards, Scott & Hoepffner, New Orleans, La., for appellee.

Before BROWN, Chief Judge, and MOORE * and BELL, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by plaintiff from a judgment for defendant entered in the United States District Court for the Eastern District of Louisiana in a suit on an instrument alleged to be negotiable, after Hon. Herbert W. Christenberry, Chief Judge, had denied plaintiff's motion for summary judgment and granted defendant's motion to dismiss the complaint.

The case came before the court (1) upon plaintiff's motion for summary judgment, Rule 56(a), based upon the pleadings (complaint, answer and counterclaim), an affidavit of plaintiff's President, and a statement in support of plaintiff's motion; and (2) upon defendant's motion to dismiss on the ground that plaintiff was not the real party in interest, Rule 17(a), and a statement in support of the motion to dismiss. The court without opinion denied plaintiff's motion for judgment in its favor and granted defendant's motion to dismiss the complaint. Such facts as are available and upon which a decision must be

* Of the Second Circuit, sitting by designation.

based must be gleaned from an altogether too scanty record.

John C. McDonald, Jr., President of The Orange National Bank of Orange, Texas (Orange), stated (in affidavit) that on November 10, 1965, he was informed by one, Dwight Parks, that the Mid-City Baptist Church (Mid-City), desirous of filling an order of an institutional investor for a large block of Mid-City bonds, had asked owners of such bonds "to draft on the Bank of Louisiana if they desired to sell them." He then drew what he calls a "sight draft" [1] on Mid-City through defendant Bank of Louisiana in New Orleans (Louisiana) in the amount of $15,000 and "sent it to the Bank (Louisiana) for collection." From the complaint it appears that the draft was accompanied by three bearer bonds of Mid-City each in the face amount of $5,000. There are no allegations in the pleadings or supporting affidavits of facts to answer the

1. The form of the instrument was substantially as follows:

EXHIBIT "A"

questions of: who is Dwight Parks? or what interest, if any, did he or Orange have in three Mid-City bonds or in the draft transaction? However, from defendant's motion to dismiss it may be assumed that Parks had pledged the bonds with Orange to secure an unmatured debt and that Orange still held the bonds as pledgee at the time of suit.

Upon receiving the instrument, with the three bonds attached, on November 11th, Louisiana called Mid-City for instructions, but was told that the pastor, the only one who could act on the matter, was out of town. Louisiana did nothing until November 17th when Mid-City obtained a writ of attachment in a state court proceeding attaching the three bonds clipped to the draft. Louisiana thereupon informed Orange that the draft would not be paid. Three months later, on February 15, 1966, after Mid-City had released the bonds from attachment, Louisiana returned the bonds and the draft to Orange.

Orange subsequently brought this suit against Louisiana on the $15,000 instrument alleging that under § 137 of the Negotiable Instruments Law (LSA–R.S. 7:137) Louisiana, by its failure to return the instrument to Orange within 24 hours of presentment, should be deemed to have accepted it and, thus, be liable to Orange for the face value.

Whether Orange was the real party in interest under Fed.R.Civ.P. 17 need not concern us on this appeal as an inspection of the draft, which only adds to the factual confusion, shows that under no circumstances can Orange recover. The drawer is apparently Mid-City; but why? McDonald has not been shown to have any authority to act for Mid-City. See NIL § 185, LSA–R.S. 7:185. If Parks wished to sell his bonds to apply on his Orange debt, he could and should have directed such a sale and application. From the face of the draft, it would appear that Mid-City was telling Louisiana to pay Orange $15,000 and to charge Mid-City's account. But there are no facts presented which indicate what, if any, account or other financial arrangement

existed between Mid-City and Louisiana. The endorsement of Orange by John C. McDonald, Jr., President, places him in a drawer-payee role, which scarcely adds to the clarity of the legal picture.

■■ Orange would have us believe that the instrument is a sight draft drawn by Orange on Mid-City through Louisiana. Such was most probably McDonald's intention. A similar construction of an ambiguous instrument was made in Safety Motors, Inc. v. Elk Horn Bank & Trust Co., 118 F.Supp. 872, 889 (W.D.Ark.), aff'd on other grounds, 217 F.2d 517 (9th Cir. 1954). Under such an interpretation, Mid-City is the drawee and Louisiana a mere collection agent. But even under this strained reading of the instrument, Orange's reliance on §§ 136 and 137 of the NIL must fail as against Louisiana as it is the *drawee* who must decide within 24 hours of presentment for acceptance whether it will accept. Orange apparently argues that Louisiana should be considered to be the drawee, and might have relied on NIL § 87 to support this claim, that section reading: "Where the instrument is made payable at a bank it is equivalent to an order to the bank to pay the same for the account of the principal debtor thereon." Section 87, however, contemplates a situation where the drawer or maker of an instrument has or purports to have an account with the bank at which the instrument is payable. Branch Banking and Trust Co. v. Bank of Washington, 255 N.C. 205, 120 S.E.2d 830, 838 (1961). Orange had no account with Louisiana and certainly had no reason to believe that Louisiana would pay drafts drawn on Louisiana by Orange.

■■ In fact, a sight draft attached to bonds or other documents and forwarded to a bank in the buyer's city amounts to no more than a collection letter and imposes no liability on the collecting bank should the collecting bank not act immediately in securing the buyer's payment of the instrument. See Benthall v. Washington Hog Market, Inc., 257 N.C. 748, 127 S.E.2d 507 (1962); Branch Banking, supra (both these cases

involve a similar draft to the one here in issue and together contain a very useful discussion of the relevant NIL sections); cf. Inland Refining Co. v. Robinson, 152 Tex. 289, 256 S.W.2d 843 (1953) (to be a negotiable instrument, sight draft must be accepted in writing).

Finally, there is no allegation or claim of damage to Orange as a result of the interval between November 11, 1965 when the bonds were received from, and February 15, 1966 when the bonds were returned to, Orange. The intervening attachment of November 11, 1965, in the State court suit may have had a factual background of "collusion" (Appellant's Brief, p. 10) but, if so, any facts supporting such a conclusion have been successfully withheld from this court.

The citation of various sections of the Negotiable Instruments Law, decisions thereunder and the Rules of Civil Procedure do not supplant on a motion for summary judgment the need for presentation of facts justifying the granting thereof. Nor do the sterile allegations of the complaint suffice to save it from a motion to dismiss.

Judgment affirmed.