PAUL LARSTON REEVES, PLAINTIFF, *v.* EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR., AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS

AND

JAMES LARRY BYRD, BY HIS NEXT FRIEND, FRED R. BYRD, PLAINTIFF, *v.* EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR., AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS, AND PAUL LARSTON REEVES, ADDITIONAL DEFENDANT

AND

VIRGIE BOWMAN SPACH, ADMINISTRATRIX OF THE ESTATE OF SAMUEL ELI SPACH, SR., PLAINTIFF, *v.* PAUL LARSTON REEVES; AND EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR.; AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS

AND

SAMUEL ELI SPACH, JR., PLAINTIFF, *v.* PAUL LARSTON REEVES; EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR.; AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS

AND

SCOTTIE JOE BOWMAN, A MINOR, BY HER NEXT FRIEND, ROSS STRANGE, PLAINTIFF, *v.* PAUL LARSTON REEVES; AND EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR.; AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS

AND

VIRGIE BOWMAN SPACH, PLAINTIFF, *v.* PAUL LARSTON REEVES; AND EDWIN B. HILL, ADMINISTRATOR OF THE ESTATE OF THOMAS FRANKLIN BRYAN, SR.; AND JACQUELINE HILL, ADMINISTRATRIX OF THE ESTATE OF DOROTHY McKINLEY BRYAN, DEFENDANTS.

(Filed 12 January, 1968.)

1. **Automobiles § 53— Physical facts at scene held sufficient for jury on issue of negligence in failing to yield one-half of highway to vehicle approaching from opposite direction.**

The evidence tended to show that a Ford driven in a westerly direction and a Chrysler driven in an easterly direction collided, that the Ford was damaged on the front and its motor thrown some 75 feet beyond where the vehicle came to rest along the north shoulder of the highway, that the left front of the Chrysler was damaged and that it came to rest on the south shoulder of the highway, that most of the debris was found in the eastbound lane, and that there were holes gouged in the asphalt, No. 1 some 4½ feet from the northern edge of the highway and another on the north edge of the highway northwest of hole No. 1, and hole No. 3 approximately in the center of the eastbound lane. *Held:* The physical evidence is sufficient to be submitted to the jury on the question of the negligence of the driver of the Ford in violating G.S. 20-148 and G.S. 20-146 in failing to pass to the right and in failing to yield at least one-half of the main-traveled portion of the highway to the other vehicle, and is determinative of the respective rights of the survivors and the personal representatives of the deceased occupants.

REEVES v. HILL AND BYRD v. HILL AND SPACH v. REEVES AND BOWMAN v. REEVES.

**2. Automobiles § 17—**

A violation of G.S. 20-148 and G.S. 20-146 is negligence *per se* and, when proximate cause of injury or damage is shown, such violation constitutes actionable negligence.

**3. Death § 3—**

Actions for wrongful death are purely statutory and neither punitive nor nominal damages are allowed, G.S. 28-173, but direct evidence that the deceaseds were in good health, that the *femme* worked for a grocery store and the male was part-owner of a garage in which he had actively worked as a mechanic presents sufficient evidence of pecuniary loss to permit the jury to return a verdict of actual damages.

**4. Trial § 15—**

Ordinarily, objection to the admission of evidence must be made at the time of its introduction.

**5. Automobiles § 90—**

The crucial contention of the parties in this automobile accident case was which of two vehicles traveling in opposite directions was to the left of its center of the highway when they collided, while the question of excessive speed was of secondary importance in determining their respective liabilities. *Held:* The fact that the court charged on one section of a speed statute which was not properly pleaded could not mislead or confuse the jury, and, under the facts of this case, such charge cannot be held prejudicial.

**6. Appeal and Error § 49—**

The exclusion of the adverse examination of a party will not be held for prejudicial error when it appears that such party fully testified to the same import upon the trial, and by questioning his own witness could have clarified any matter he deemed beclouded by the cross-examination, and it was within the sound discretion of the trial court to stop the time-consuming and tedious process of reading the questions and answers in the adverse examination.

**7. Same—**

The exclusion of testimony is not prejudicial when it appears that other witnesses had testified to the same import.

**8. Automobiles § 45—**

Testimony as to the manner in which defendant operated his car and changed lanes at some unknown town at an unstated time prior to the accident in suit and while some undetermined distance from the scene of the collision, is too remote to allow the jury to consider the matter in inferring his physical condition at the time and place of the collision.

APPEAL by Paul Larston Reeves from *Gambill, J.,* 5 June 1967 Regular Civil Session of FORSYTH.

This appeal involves six civil actions for recovery of damages for personal injuries sustained and for wrongful death occurring as a result of a two-vehicle collision, which occurred in Guilford County on U. S. Highway 62 on 9 November 1963. Involved in the collision

was a 1956 Ford, driven in a westerly direction by Paul Larston Reeves, and a 1955 Chrysler station wagon, driven in an easterly direction by Thomas Franklin Bryan, Sr., and owned by his wife, Dorothy McKinley Bryan, who was a passenger in the car.

Other passengers in the Chrysler were Virgie Bowman Spach, Samuel Eli Spach, Sr., Samuel Eli Spach, Jr., and Scottie Jo Bowman. James Larry Byrd was the only passenger in the Ford. The parties stipulated that Bryan was operating the Chrysler as the agent of his wife when the collision occurred. Bryan and his wife and Samuel Eli Spach, Sr., died as a result of injuries sustained in the wreck, and the other persons listed above suffered personal injuries.

All surviving occupants and all administrators of deceased occupants of the two automobiles involved in the collision were parties to this litigation. The suits were consolidated for trial.

Paul Larston Reeves sued the administrators of Mr. and Mrs. Bryan to recover for personal injuries, alleging negligence in that, among other things, Thomas Bryan operated the automobile at a speed greater than was reasonably prudent under existing conditions; that he operated the automobile over a public highway to the left of the center of the roadway; and that he failed to give plaintiff at least one-half of the main-traveled portion of the roadway, and that Bryan's negligence is imputed to his wife on the theory of agency. The administrators answered, denying negligence. They pleaded contributory negligence and asserted counterclaims for wrongful death of their respective intestates, alleging, *inter alia*, that plaintiff was negligent in that he failed to drive his car upon the right half of the highway; that he failed to yield at least one-half of the main-traveled portion of the highway to the Chrysler automobile, and that he operated the Ford at a speed greater than was reasonable and prudent under existing conditions. In his reply, Reeves denied negligence on his part and alleged contributory negligence of Mr. Bryan, imputed to Mrs. Bryan on the agency theory, in defense of the counterclaim.

Reeves testified that he and James Larry Byrd went to Perry's Danceland on the night of 8 November 1963, arriving about 7:55 P.M. Perry's Danceland had not opened, so they went across the street to Charlie's Place. There Reeves drank one can of beer, and he testified that he had nothing else of an alcoholic nature to drink that night. He and Byrd then went back to Perry's Danceland. They left there about 12:00 midnight in the Ford, which belonged to Reeves' sister-in-law, to go to the "Dunkin Doughnut" in High Point. Reeves testified that before the collision he was traveling 40 to 45 miles per hour up a hill and could see the lights of an approach-

ing car over the hill. When he reached the top of the hill he saw a car approaching "at what seemed like a normal speed" from the opposite direction and did not notice anything unusual at that time, but when the car came within fifty feet of him it started across the center of the road, and struck his car "head-on."

The court disallowed the reading of the adverse examination of Reeves on the stipulation of defendants Bryan that the adverse examination corroborated Reeves except for any admissions or any change as a result of cross-examination by counsel for the administrators for the Bryans at the trial.

James Larry Byrd sued the Bryan administrators to recover for personal injuries, alleging negligence of Thomas Bryan, imputed to his wife. The Bryan administrators denied negligence and subsequently joined Reeves as a third party defendant, filing cross-actions for contribution. In answer to the cross-actions, Reeves denied negligence and asserted a counterclaim for personal injuries against the Bryan administrators.

Byrd testified, in substance, that he was with Reeves on the night of the accident. Before the accident, he was trying to place a piece of cardboard over a hole in the window on the passenger's side of the car. As Reeves approached the top of the hill, he "hit" Byrd and said something to the effect that "they are coming right at us." Thereafter, all Byrd could remember was that he saw the approaching car and that Reeves ran off the side of the road.

Virgie Bowman Spach, administratrix of Samuel Eli Spach, Sr., sued the Bryan administrators and Reeves to recover for wrongful death of her intestate. Virgie Bowman Spach, Samuel Eli Spach, Jr., and Scottie Jo Bowman sued the Bryan administrators and Reeves to recover for personal injuries. In each of the above four cases the respective plaintiffs alleged that the injuries and death were caused by the joint and concurring negligence of Bryan and Reeves. Each defendant denied negligence on his part, and alleged sole negligence on the part of the other defendant.

Scottie Jo Bowman and Virgie Bowman Spach, testifying as to the events before the collision, stated that they, in company with Mr. and Mrs. Bryan, Samuel Eli Spach, Sr., and Samuel Eli Spach, Jr., had left Winston-Salem about 10:00 P.M. en route to Wilmington, North Carolina. Virgie Bowman Spach testified that Thomas Bryan said he was hungry and tired, after which they stopped at a drive-in to get something to eat. Scottie Jo Bowman and Virgie Bowman Spach testified that they did not remember the collision because they were asleep at the time it occurred.

H. B. Shaw, of the North Carolina Highway Patrol, testified in material part as follows: He assisted in the investigation of the

wreck. N. C. Highway 62, where the collision occurred, was a tar and gravel hard surface road 18½ feet wide and ran in an east-west direction. There was a 7-foot shoulder on the north side of the road and a 10-foot shoulder on the south side. A dirt road, designated as state road 1102, intersected U. S. Highway 62 from the south, forming a "T" intersection. A road sign designating road 1102 was located on the north shoulder of U. S. Highway 62. Shaw drew an imaginary line from this sign representing the center of the dirt road 1102. He described holes that he observed on U. S. 62 which had the tar dug out of them. Hole #1 was 4½ feet east of the imaginary center line and 1 foot 8 inches south of the center line of U. S. 62. Hole #2 was on the north edge of U. S. 62 and northwest of hole #1. Hole #3 was approximately in the center of the eastbound lane of U. S. 62 and 10 inches east of the imaginary center line dividing road 1102. Shaw observed two marks leaving U. S. 62 and continuing down the north shoulder of U. S. 62 east of the intersection and then coming back onto the highway west of the point where the marks left the highway. He described a pressure mark leading from the southernmost mark on the shoulder for a distance of about 36 feet in a southwesterly direction on the hard surface portion of U. S. 62. His estimate of the distance from the western point of the pressure mark to hole #1 was 50 to 60 feet. The Ford came to rest about 30 feet from Hole #1 off the north edge of U. S. 62 and west of the road sign. The Chrysler station wagon came to rest about 9 feet south of hole #3 at the northeastern corner of road 1102 intersecting U. S. 62 and headed in a northeasterly direction. Marks in the dirt road 12½ feet long led to the rear wheels of the Chrysler from west to east. The Chrysler was about 16 feet long and 5½ to 6 feet wide. Shaw stated that the transmission on the Chrysler, located at the center of the car and approximately 6 to 8 feet from the front bumper, was broken loose and hanging down. The transmission had tar and scratches on it. The Ford and Chrysler were damaged on the left front.

Roy B. Holman, also a member of the State Highway Patrol, testified in material part as follows: He was on U. S. 62 at the time he received the call concerning the accident at approximately 12:15 A.M. on 9 November 1963, and arrived at the scene about 5 minutes later. On arrival, he found the Chrysler on the dirt portion of rural unpaved road 1102. About an hour passed from the time he received the call and when he began to look around the accident scene. The Ford, except for the left rear tire, was on the north shoulder of U. S. 62. Byrd was lying in the eastbound lane and Reeves was lying near the shoulder on the right side of the Ford. All the persons rid-

ing in the Chrysler station wagon were still inside the car except Virgie Bowman Spach, who was lying on the shoulder, partially in the dirt portion of the road. Holman observed that most of the debris was in the eastbound lane. The debris consisted of oil, dirt and broken glass. He also observed an oil spot, 3 feet in diameter, east of the imaginary line and just across the center line of U. S. 62 in the westbound lane. Holman told of two indentations in the dirt on the north shoulder of U. S. 62 leading in a westerly direction, and a pressure mark extending out into the road. The shoulder was composed of fine dirt and rocks and, in his opinion, the marks were fresh. He observed the pressure mark going into the debris. Holman identified the two holes in the pavement in the eastbound lane. The wheels on the Chrysler were turned to the left and the wheels on the Ford were turned to the right. He found the engine of the Ford car about 75 feet in front of the Ford. A drainage ditch ran along the north shoulder of U. S. 62, but Holman did not think the Ford was down in the ditch. The Reeves car was damaged on the front and the Bryan car was damaged on the left front. The night was clear and the road was dry.

The evidence as to personal injuries was omitted as being immaterial to the appeal.

Reeves' motion for judgment as of nonsuit at the conclusion of all plaintiff's evidence, in the suits brought by Samuel Eli Spach, Jr., Virgie Bowman Spach, Scottie Jo Bowman, and Virgie Bowman Spach, administratrix, was denied. The Bryan administrators offered no evidence. At the close of all the evidence, Reeves moved for judgment of nonsuit as to James Larry Byrd, Virgie Bowman Spach, individually and as administratrix, Scottie Jo Bowman and Samuel Eli Spach, Jr., and also as to the counterclaims of Edwin B. Hill, administrator, and Jacqueline Hill, administratrix. The motion was denied.

The jury answered the issues in favor of the administrators of the estates of Thomas F. Bryan, Sr., and Dorothy McKinley Bryan on their counterclaims against Paul Larston Reeves. The issues were also answered favorably to plaintiffs and against Paul Larston Reeves in the cases of Virgie Bowman Spach, individually and as administratrix of the estate of Samuel Eli Spach, Sr., and in the cases of Samuel Eli Spach, Jr., and Scottie Jo Bowman. In all cases the issues were answered unfavorably to plaintiffs as to the Bryan administrators. Judgments were entered dismissing the actions against the Bryan administrators. From judgments entered on the verdicts against him, Paul Larston Reeves appealed. James Larry

Byrd gave notice of appeal from judgment dismissing his action against the Bryan administrators, but failed to perfect his appeal.

*Haworth, Riggs, Kuhn and Haworth and Walter W. Baker, Jr., and Forman, Zuckerman and Scheer for plaintiff appellant.*
*T. Conway Pruett and Womble, Carlyle, Sandridge & Rice and Grady Barnhill, Jr., for defendants Edwin B. Hill, Administrator of the Estate of Thomas Franklin Bryan, Sr., and Jacqueline Hill, Administratrix of the Estate of Dorothy McKinley Bryan.*

BRANCH, J. Appellant contends the trial judge erred in denying his motion for judgment as of nonsuit.

Defendants Edwin B. Hill, Administrator of Thomas Franklin Bryan, Sr., and Jacqueline Hill, Administratrix of the estate of Dorothy McKinley Bryan, plaintiff Virgie Bowman Spach, administratrix of Samuel Eli Spach, Sr., and plaintiffs Virgie Bowman Spach, Samuel Eli Spach, Jr., and Scottie Jo Bowman (hereinafter called appellees) by their respective complaints and counterclaims allege, *inter alia,* that appellant Reeves violated the provisions of G.S. 20-148 and G.S. 20-146, in that he failed to pass to the right and give at least one-half of the main-traveled portion of the highway to the automobile in which appellees were riding.

The evidence of Patrolman Holman pertinent to these allegations is as follows:

"I first observed most of the debris on this side of the road, or would be the eastbound lane. There was oil, there was some dirt, there were some broken pieces of glass, red in color, and some was just white, regular glass. . . .

". . . we found, on the right-hand shoulder - - -

Q. Right-hand shoulder as a person would be headed towards High Point?
A. Yes, sir.

Q. All right, go ahead.
A. Two indentations into the dirt on the shoulder.

Q. Were they old or fresh?
A. In my opinion they were fresh marks.

Q. All right, go ahead.
A. They led in a westerly direction towards the rural unpaved road, and the inside indentation, or pressure mark that I found, extended from the — a pressure mark — a black mark or pressure mark, out into the road.

Q. On the hard surface you mean?

A. Yes, sir.

Q. How far onto the hard surface?

A. I didn't step it off. I didn't make that measurement.

Q. I see. Go ahead and tell what else you found.

A. Then, I believe I observed it going back *into the debris* — the pressure mark, or a cut out place into the highway, near the center of the road, which would be on the south side, *or in the eastbound lane* — a cut portion of the road, cut away." (Emphasis ours.)

A violation of G.S. 20-148 or G.S. 20-146 is negligence *per se*, and when proximate cause of injury or damage is shown, such violation constitutes actionable negligence. *Anderson v. Webb,* 267 N.C. 745, 148 S.E. 2d 846. See also *McGinnis v. Robinson,* 258 N.C. 264, 128 S.E. 2d 608; *Bondurant v. Mastin,* 252 N.C. 190, 114 S.E. 2d 292; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211; *Grimes v. Coach Co.,* 203 N.C. 605, 166 S.E. 599.

Where plaintiff sues for injuries or damages caused by an automobile collision and offers evidence showing that defendant was driving left of the center of the highway when the collision occurred, such evidence makes out a *prima facie* case of actionable negligence. *Anderson v. Webb, supra.*

When considered in the light most favorable to appellees, the testimony as to marks on the north side of the highway going back "into the debris" located in the eastbound lane, when buttressed by the testimony of the dug out holes on the south side of the highway as related to the Chrysler station wagon, permits a reasonable inference that appellant Reeves failed to pass to the right and give at least one-half of the main-traveled portion of the highway to the Bryan automobile.

Appellant also argues that the two Bryans' wrongful death counterclaims should have been nonsuited because the plaintiff administrators failed to show pecuniary loss. In this connection the administrators of the deceased Bryans elicited from the witness Mrs. Spach evidence as follows:

"Both Mr. Bryan and my husband were mechanics by trade and had been mechanics for many years, or in the mechanical business. I knew Mr. and Mrs. Bryan, I had known them for some time — about two years. I had been living here in Winston-Salem. I had visited in their home and they had visited in my home. So far as I know, Mr. and Mrs. Bryan were fine

people. Mrs. Bryan worked, I believe, at that time in a grocery store — Hodges Distributing Company was the name of it. I don't really know if Mrs. Bryan ever worked at L. Roberts, a lady's store. So far as I know, like my husband, they were in good health.

"My husband and Mr. Bryan both worked pretty long hours in the mechanical business out there. Both of them were good mechanics so far as I know. Before Mr. Bryan and my husband went in together in this partnership, Mr. Bryan worked at his garage — I suppose he owned this garage — as far as I know. I'm talking about Mr. Bryan. Then my husband went in with him. I think Mr. Bryan had operated that garage for some time but I don't know just how long."

Actions for wrongful death are creatures of the statute and the statute does not provide for assessment of punitive damages nor the allowing of nominal damages in the absence of pecuniary loss. G.S. 28-173, 174; *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793; *Hines v. Frink and Frink v. Hines,* 257 N.C. 723, 127 S.E. 2d 508.

This Court has recognized an exception to this rule, as a rule of necessity, by allowing recovery for wrongful death of an infant without direct evidence of pecuniary damage other than sex, age and health. *Russell v. Steamboat Co.,* 126 N.C. 961, 36 S.E. 191.

Nor is it essential that direct evidence of the earnings of a deceased adult be offered in order for there to be recovery of damages. Evidence of his health, age, industry, means and business are competent to show pecuniary loss. *Hicks v. Love and Bruton v. Love,* 201 N.C. 773, 161 S.E. 394; *Owens v. Kelly,* 240 N.C. 770, 84 S.E. 2d 163.

Appellant relies heavily on *Hines v. Frink and Frink v. Hines, supra.* This case is distinguishable from instant case in that in *Hines v. Frink and Frink v. Hines* the record was devoid of any evidence as to age, health, habits or earning capacity. Here, there was evidence that the Bryans were in good health; that Mrs. Bryan worked for a grocery store and Mr. Bryan was part-owner of a garage in which he actively worked as a mechanic. This presents sufficient evidence of pecuniary loss to permit the jury to return a verdict for damages in favor of the Bryan administrators.

The assignment of error relating to the trial court's rulings on the evidence of marks on the north side of the highway is without merit. Appellant did not object to, except to, or move that the evidence elicited as to marks on the north side of the highway be stricken. Rather, he argues in his brief that, because of the confusing manner in which witnesses testified and because of the diffi-

culty experienced by the court reporter in keeping track of the progress of the trial, he was justified in waiting until all the evidence was in to move that such evidence not be considered.

It is generally recognized in this jurisdiction that evidence admitted without objection is properly considered by the court in determining the sufficiency of the evidence and by the jury in determining the issue, even though the evidence is incompetent and should have been excluded had objection been made. This rule does not apply if the evidence admitted without objection is precluded by statute in furtherance of public policy. 1 N. C. Index 2d, Appeal and Error, § 30, p. 162; *Cotton Mills v. Local 578,* 251 N.C. 218, 111 S.E. 2d 457. The objection to the admission of this evidence must be made at the time of its introduction, *Steelman v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829; *Parsons v. Benfield,* 228 N.C. 651, 46 S.E. 2d 829, and where testimony sufficient to establish a fact at issue has been received in evidence without objection, a nonsuit cannot be sustained even if the only evidence tending to establish the disputed fact is incompetent. *Skipper v. Yow,* 249 N.C. 49, 105 S.E. 2d 205.

All appellees allege high speed and violations of G.S. 20-140, G.S. 20-141(a) and G.S. 20-141(c).

We recognize that since appellees rely on the physical facts at the scene of the collision to carry their cases to the jury, they must offer evidence by established facts sufficient to take the cases out of the realm of conjecture and into the field of legitimate inference. *Williamson v. Randall,* 248 N.C. 20, 102 S.E. 2d 381; *Parker v. Wilson,* 247 N.C. 47, 100 S.E. 2d 258.

The physical facts, speaking louder than words, show that the Chrysler station wagon moved less than 10 feet towards the south side of the road from the debris and holes found in the south side of the road, while the Ford traveled about 30 feet from this point, and the motor of the Ford, operated by appellant, was found 75 feet in front of the place where the Ford came to rest and about 105 feet northwest from the debris located on the south side of the road. If the station wagon had been traveling at a high rate of speed and had struck the Ford "head-on", a strong inference would arise that the Chrysler station wagon would have driven the Ford back to the north side of the highway and that the Chrysler would have continued a greater distance away from the point of impact; further, that such a collision would not have resulted in the motor from the Ford automobile being thrown *forward* in a northwesterly direction.

The tremendous damage to the automobiles, when taken with the physical facts on both sides of the road and considered with appellant's statement that the Bryan automobile approached at "what seemed like a normal speed," and when taken in the light

most favorable to appellees, permits the inference that appellant Reeves immediately before and at the time of the collision operated his automobile at an excessive speed.

Appellees having made out a *prima facie* case of actionable negligence, it then becomes a question for the jury. The trial court correctly denied appellant's motions for nonsuit.

Appellant contends the trial judge committed reversible error in connection with his instructions relative to speed.

> "One of the most important purposes of the charge is 'the elimination of irrelevant matters, and causes of action or allegations as to which no evidence has been offered, and (to) thereby let the jury understand and appreciate the precise facts that are material and determinative.' . . . it is error to charge on an abstract principle of law not raised by proper pleading and not supported by any view of the evidence." *Dunlap v. Lee,* 257 N.C. 447, 126 S.E. 2d 62.

In the pleadings in the instant case there are allegations as to excessive speed and evidence of physical facts sufficient to infer excessive speed. Appellant vigorously argues that there is prejudicial error because the judge charged on G.S. 20-141(b) (exceeding stated speed limits) when it was not pleaded. This is ordinarily error; however, in the instant case, since there was sufficient allegations and proof to justify a jury-verdict on the basis of negligence other than exceeding the stated speed limit (*i.e.* violation of G.S. 20-148 and G.S. 20-146, G.S. 20-141(a) and G.S. 20-141(c)), the fact that the trial judge charged on one section of a speed statute which was not properly pleaded would not seem to mislead or confuse the jury under the facts of this case so as to influence the verdict. While not a model charge, as a whole it is sufficient to allow the jury to understand the precise facts which are determinative of the issues, and therefore does not contain prejudicial error.

Appellant assigns as error the ruling of the trial judge which excluded from the consideration of the jury the adverse examination of appellant Reeves.

Prior consistent statements of the witness are admissible to strengthen his credibility when his veracity has been impugned in any way. *March v. Harrell,* 46 N.C. 329. In interpreting this rule we must consider it with the well recognized principle that it is the duty of the judge to control and supervise the course and conduct of the trial. *Miller v. Greenwood,* 218 N.C. 146, 10 S.E. 2d 708.

It is admitted in the record that appellant testified to substantially the same thing at the trial as he did in his adverse examination. By questioning his own witness, appellant's counsel could

clarify any matter he deemed beclouded by the cross-examination, rather than pursue the time-consuming and tedious process of reading the questions and answers in the adverse examination and requiring the trial court to pass on objections to such questions and answers. In the case of *Greer v. Whittington,* 251 N.C. 630, 111 S.E. 2d 912, the Court quoted from *Electric Park Amusement Co. v. Psichos,* 83 N.J.L. 262, 83 A. 766, as follows: " 'It is always in a judge's discretion, as indeed it is his duty, to stop an examination when he can see that its further progress will be futile; it is especially important to do so in a long case like this.' " We find no prejudicial error in the court's ruling excluding the adverse examination.

Appellant assigns as error the failure of the judge to admit certain testimony relative to the physical condition of the driver of the Bryan automobile before the collision.

Virgie Bowman Spach testified, in part:

"We left my husband's house trailer about 10:00 o'clock on our way to Wilmington and we drove a right good ways and we stopped at this drive-in cafe to get something to eat, and then after we left there we had the wreck.

"After we left there I laid my head over on my husband's shoulder and went to sleep, and next thing I remembered, we were in the wreck. I don't remember the collision at all. The next thing I remember, I heard a lot of loud talking and I heard someone tell me to be quiet, that we had had a wreck. I didn't know where I was at that time. I don't know whether I was in the car or on the ground.

CROSS EXAMINATION by Mr. Parrish:

On this night we had occasion to stop to get something to eat on the way to the beach. I believe the place we stopped at was Kelly's Place just out of Winston.

Q. Mrs. Spach, I'll ask you what, if anything, did Mr. Bryan say as regards his physical condition when you stopped to get something to eat?

MR. BARNHILL: Object.

OBJECTION OVERRULED.

A. Mr. Bryan said he was hungry and tired, he thought we'd stop and get a bite to eat.

Q. Did you have an occurrence or did something happen later on down the road as regards the operation of the car?

MR. BARNHILL: Object.

Objection sustained, and the plaintiff Reeves, in apt time, excepted.

### EXCEPTION No. 10.

(If permitted, the witness would have answered as follows: "Well, just before we were in the wreck this car was coming on behind Mr. Bryan, and started to make a — started to pass him, and Mr. Bryan merged over in the left lane and almost hit him. He cussed him and called him a G. D. S. O. B. several times and told him to take all of the road, and my husband said to go ahead, and he said, 'I guess it's just a bunch of drunks.''

Scottie Jo Bowman testified, in part, as follows:

"Q. All right. Did you hear Mr. Bryan make any statement at any time along — either at the time you were leaving Winston-Salem or any time between there and the accident about being tired or sleepy?

MR. BARNHILL: Objection.
THE COURT: Overruled.

Q. Did you?
A. Well, a short time before we stopped we were talking about we were — he was tired, he'd like to get something to eat — might rest him.

Q. All right. And did you hear him make that statement?
A. Yes, sir.

THE COURT: Wait a minute. Strike it out. Strike out her statement about — she's a passenger in his automobile and he's dead. Strike it out.

To the striking of the answer, the plaintiff Reeves, in apt time, excepted.                    EXCEPTION No. 8.

I do not recall that the restaurant that I spoke of is located here in the southern end of Winston-Salem. I'm not familiar with it. After we had something to eat we then proceeded on towards Wilmington. I don't remember what time it was that I went to sleep, but I remember asking what time it was, and I'm not sure, but it was something till 12:00.

I do not remember going through any towns. It was night and I really wasn't paying any attention.

Q. Now, somewhere between Winston-Salem and the place where this wreck happened did something else happen with respect to the operation of the car by Mr. Bryan?

MR. BARNHILL:   Object.

Objection sustained, and the plaintiff Reeves in apt time excepted.                    EXCEPTION No. 9.

(If permitted, the witness would have answered as follows: 'We were going down the street — I'm not sure what town — but there was a car caming out of a side street, and it came over — it was sort of — I'll call it Main Street. I'm not sure of the street, but it was — Mr. Bryan started to change lanes over into the left lane — he was on the outside lane, and he liked to bump the front end of the other car, and this car pulled up beside of him and cursed him for a right good while and then went on down the street and turned left.' "

It is apparent that this testimony was offered to show that the driver of the Bryan automobile was tired and sleepy and that his physical condition contributed to the collision.

It is noted that the witness, Virgie Bowman Spach, was allowed to testify that Bryan stated "he was hungry and tired, and he thought we'd get a bite to eat." The fact that similar testimony was stricken when offered through another witness is not prejudicial. *Rowe v. Murphy,* 250 N.C. 627, 109 S.E. 2d 474.

The remaining testimony offered as to Bryan's physical condition was not in any way correlated with the collision as to time, place and distance.

The case of *Greene v. Meredith,* 264 N.C. 178, 141 S.E. 2d 287, holds that it is prejudicial error to admit testimony of the defendant's excessive speed at a point some two miles from the point of collision when there is no evidence that the defendant continued to maintain such speed to the time of the collision.

Again considering whether evidence was too remote or conjectural to be admissible, the Court in *Corum v. Comer,* 256 N.C. 252, 123 S.E. 2d 473, stated:

"The question is the negligence of the offending party at the time and place of the accident. It does not necessarily follow that a defendant is negligent at a particular time and place because he was negligent at some other place and at a different time."

Evidence of the fact that Bryan might have changed into another lane at some unknown town, at an unstated time, while he was an undetermined distance from the scene of the collision, is too remote to allow the jury to infer his physical condition at the time and place of the collision.

We find no prejudicial error in the record which warrants a new trial.

No error.