SCOTT P. SOBCZAK, Plaintiff v. MATTHEW G. VORHOLT, Defendant

No. COA05-1298

(Filed 20 February 2007)

**1. Motor Vehicles— accident on snowy road—crossing center line—intent irrelevant—instruction on statutory violation**

The trial court erred in a case involving a traffic accident on a snowy road by refusing to give plaintiff's requested instruction that defendant violated N.C.G.S. § 20-146(d) by failing to keep his vehicle in his lane of travel. It is irrelevant that defendant did not intentionally drive across the center line; there was evidence from which a jury could find that defendant was negligent before he lost control.

**2. Motor Vehicles— accident on snowy road—sudden emergency instruction—erroneously given—awareness of risk**

The trial court erred by giving a sudden emergency instruction in a case arising from a traffic accident on a snowy road. Because defendant knew or should have known that the snow could become ice in some areas, the mere fact that he did not see the icy patch in advance of hitting it is insufficient to establish that he was confronted with a sudden emergency.

Appeal by Plaintiff from judgment entered 7 February 2005 by Judge W. Osmond Smith, III, in Durham County Superior Court. Heard in the Court of Appeals 12 April 2006.

*Thomas, Ferguson & Mullins, L.L.P., by Jay H. Ferguson, for Plaintiff-Appellant.*

*Law Offices of Douglas F. DeBank, by Douglas F. DeBank, for Defendant-Appellee.*

SOBCZAK v. VORHOLT

[181 N.C. App. 629 (2007)]

STEPHENS, Judge.

Plaintiff appeals from a judgment of the trial court which dismissed his lawsuit with prejudice after a jury found in favor of Defendant. In support of his appeal, Plaintiff brings forward two assignments of error relating to the trial judge's instructions to the jury. For the reasons stated herein, we reverse and remand for a new trial.

At trial during the 31 January 2005 session of Civil Superior Court of Durham County, the evidence tended to show that on 9 January 2001, Plaintiff left his home in Pittsboro about 7:00 a.m. en route to his job as an automotive mechanic in Chapel Hill. He traveled the same direction as usual which took him northbound on Jones Ferry Road. The sun was not quite up yet, but Plaintiff could see without lights. It had snowed the previous evening, and there was a light dusting of snow on the ground and the roadway. As Plaintiff proceeded north, he saw Defendant approaching in the southbound lane of travel. Jones Ferry Road in that area is a two-lane, narrow "country road[.]" Looking north, the road is "a straight shot." The speed limit is fifty-five miles per hour, but due to the snowy conditions, Plaintiff was driving thirty to thirty-five miles per hour. He testified that he felt his speed was a "safe, manageable speed . . . given the conditions[,]" and was a speed that would enable him to keep control of his vehicle, a 1994 Toyota truck.

When Plaintiff was about twenty to twenty-five feet away from Defendant, he saw Defendant's front passenger wheel going off the surface of the road. Plaintiff slowed down and eased his vehicle further toward the right shoulder. He then observed Defendant's wheels turning to get back on the road. Within fifteen to twenty feet of Plaintiff, Defendant's car, a 1996 Ford Escort, "shot" across the road and struck Plaintiff's truck, causing it to turn over on its side. The point of impact was primarily the front quarter panel of Plaintiff's truck and "head on, . . . right up the center" of Defendant's car. The collision occurred in Plaintiff's lane of travel.

Plaintiff's wife, Norma Sobczak, also drove on Jones Ferry Road that morning on her way to work. She testified that there was a light dusting of snow on the ground, but she "felt comfortable enough" driving. She said the sun had not yet come up, but it was nevertheless light enough to see and she "could still see a little bit of the snow[]" on the road. Mrs. Sobczak traveled to the scene of her husband's accident, where she observed Defendant's car in the middle of the road and Plaintiff's truck on the side of the road.

Timothy Horne, an investigator with the Orange County Sheriff's Department, arrived on the scene just after the accident occurred. He came onto Jones Ferry Road headed southbound, traveling in the same direction as Defendant. Deputy Horne testified that the sun was not "totally up[,]" but it was "light enough" that he could see. Even though there was a light dusting of snow on the roadway, he could make out the center line and shoulder. He also observed tracks in the snow where cars had been traveling through it and noted that the snow was deeper in some areas than others. He said he could distinguish between the car tracks and the surrounding area, and that he had no trouble seeing the areas that were snowy and icy as he drove to the accident scene.

At the scene, Deputy Horne, who is related to Plaintiff by marriage, saw Plaintiff's truck flipped onto the passenger side in the northbound lane of travel and Defendant's car in the southbound lane, close to the center line. Plaintiff told Deputy Horne that a car had crossed into his lane and struck his truck.

Deputy Horne then identified the other driver as Defendant. According to Deputy Horne, Defendant told him that he was on his way to work and as he was going around a corner, "he must have been going a little too fast and he slid over and hit [Plaintiff][.]"

Bobby Price of the North Carolina Highway Patrol received a call at 7:18 a.m. for emergency assistance at the accident scene. He testified it was still dawn at that time, but the sun was "breaking over the horizon real good[]" and he could see without lights. Officer Price traveled to the scene in the same direction as Defendant had driven. He testified that there was "a lot of ice and black ice on Jones Ferry Road[,]" explaining that there would be clear stretches and then shaded areas that were "pretty consistent with ice." The road conditions required him to drive slowly. When he arrived on the scene, Plaintiff had already been taken to the emergency room. He interviewed Defendant about what had happened and had Defendant prepare a written statement, which said: "I was heading southbound coming out of a turn. My car got on the ice patches and was caused to start fishtailing. . . . I could not gain control and crossed the line and hit an oncoming vehicle."

Officer Price prepared a diagram of the accident scene and, during his investigation, determined that the collision occurred in the northbound lane. Defendant told Officer Price that he was traveling approximately thirty to thirty-five miles per hour before the accident.

Officer Price issued a citation to Defendant for exceeding a safe speed while driving on ice.

Greg Tilley, a first responder on the scene, testified that "we were in a bad weather, severe weather, response. . . . And upon dispatch, they let us know that the roads were bad and we need[ed] to proceed with caution." He described the roadway as an "icy, snowy condition." Even though it was early morning, the light conditions were "[g]ood[,]" and he had no problem seeing as he drove to the scene. He stated that "you could definitely see patches of different things on the road the whole way over," and the conditions were "very obvious." Mr. Tilley said that Defendant made "a comment . . . to the effect that, . . . maybe speed had something to do with the accident, because of the road conditions."

Mary Stoffregen, an elementary school teacher, testified that she was following Plaintiff's truck when Defendant struck it. She described the road conditions as "slippery" and testified that, as she drove, she was wondering why school had not been delayed. She stated further that she "was not feeling safe driving to school on the roads."

Defendant testified that he left home at 6:40 a.m. to get to his job site early to turn on the heaters, which was one of his responsibilities. Defendant was not due at work until 8:00 a.m., but he ordinarily arrived between 7:20 and 7:30 a.m. His commute usually took him thirty-five to forty minutes. He had been working at this particular job site for about seven months and always took the same route to work. On this morning, Defendant observed a dusting of snow on his car and left early due to the weather conditions. He was driving in third gear with his headlights on and his windshield wipers operating, and was going approximately thirty to thirty-five miles per hour with both hands on the steering wheel. Defendant described the road on which he was traveling as "twist[ing] and turn[ing]." He noticed the dusting of snow on Jones Ferry Road and testified that "it was hard to somewhat make out[.]" He described Jones Ferry Road as a "very narrow road, [with] very little room for error, even on a good day."

Defendant estimated that he traveled approximately four miles on Jones Ferry Road before the accident occurred and said that, during those four miles, he did not encounter any slipping, sliding, or spinning of his wheels and did not "com[e] anywhere close to losing control" of his vehicle. When asked whether there was any black or hidden ice, or ice he could not see, Defendant responded, "[N]othing

that I could really make out, other than you could see, . . . where the snow was, and, of course, with the tire tracks through there, knowing . . . it had possibly been compacted down into ice."

As Defendant came out of a bend into the straightaway, he saw a car "quit[e] a distance" in front of him slide "just a little bit" and apply its brakes. He estimated that the car was thirty to forty yards ahead of him. Defendant then "immediately thought, okay, there's ice coming." Defendant testified that he put his clutch in and approached the ice. He said that putting the clutch in "pulled power away from the vehicle[,]" but he did not know if the car slowed down. When he hit the ice, his car slid and he did not feel like he had any control over his vehicle. Defendant tried to regain control of his wheels by steering off the road onto the right shoulder. However, when his car hit the shoulder, it "bounced," came back onto the road, and crashed into Plaintiff's vehicle. Defendant testified that it was his intent to get off the road and stop his vehicle. He testified further that he did not see the ice before he hit it, and he had not seen any ice patches on Jones Ferry Road during his entire drive that morning before the accident.

Defendant denied telling Deputy Horne that he must have been going too fast. He told Officer Price that he did not want to miss work to attend his court date for the citation he received. Officer Price explained that Defendant could pay his ticket off or attend his court date. Defendant testified that he elected to pay the ticket off because he "couldn't afford to miss work." He did not intend to admit fault or responsibility by doing so. He believed that if he paid the ticket off, "it was gone." At trial, Defendant denied responsibility for the accident.

Plaintiff was taken by ambulance to UNC Hospital where he was admitted for treatment of a compression fracture of his spine. He incurred total medical expenses of $13,208.65 and was out of work for four months.

On 3 February 2005, after instructions, the trial judge sent the case to the jury. The negligence instruction given by the judge, in pertinent part, was as follows:

[T]he plaintiff must prove by the greater weight of the evidence that the defendant was negligent and that such negligence was a proximate cause of the plaintiff's injuries.

Negligence refers to a person's failure to follow a duty of conduct imposed by law. Every person is under a duty to use ordinary

care to protect himself and others from injury. . . . [O]rdinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury. A person's failure to use ordinary care is negligence.

Every person is also under a duty to follow standards of conduct enacted as laws for the safety of the public. A standard of conduct established by safety statute must be followed. A person's failure to do so is negligence in and of itself.

A person who, through no negligence of his own, is suddenly and unexpectedly confronted with imminent danger to himself or others, whether actual or apparent, is not required to use the same judgment that would be required if there were more time to make a decision. The person's duty is to use that degree of care which a reasonable and prudent person would use under the same or similar circumstances.

If, in a moment of sudden emergency, a person makes a decision that a reasonably prudent person would make under the same or similar circumstances, he does all that the law requires, even if in hindsight some different decision would have been better or safer.

If, in a moment of such sudden emergency, an operator uses that degree of care which a reasonably prudent person would use under the same or similar circumstance, he would not be negligent even though he may have violated a standard of conduct established by safety statute. In other words, an operator's conduct which might otherwise be negligent in and of itself would not be negligent if it results from a sudden emergency that is not of the operator's own making.

The judge also charged the jury on Plaintiff's specific contentions of negligence, that (1) Defendant failed to use ordinary care by failing to keep a reasonable lookout, (2) Defendant failed to use ordinary care by failing to keep his vehicle under proper control, and (3) Defendant violated a safety statute by operating his vehicle at a speed greater than was reasonable and prudent under the conditions then existing. He included the following:

When the conditions existing at the scene, such as ice, and/or snow, on the roadway, increase the danger by comparison to that

existing under normal conditions, the care required of the operator is correspondingly increased. . . .

The mere skidding of a vehicle does not by itself imply negligence. However, you may consider skidding as some evidence of negligence when the vehicle skids because[](a) the vehicle is operated at a speed in excess of that speed that would be reasonable and prudent for the existing conditions; and/or, (b)[] there is ice and/or snow on the roadway. Such evidence may be considered together with all of the other evidence in determining whether the operator failed to drive at a speed and in a manner which allowed the operator to maintain that degree of control over the vehicle which a reasonably careful and prudent person would have maintained under the same or similar circumstances.

. . . .

In determining whether the vehicle was being operated at a speed greater than was reasonable and prudent . . . , you should consider all of the evidence about the physical features at the scene[:] the time of day, the weather conditions, the extent of other traffic, the width and nature of the roadway, and any other circumstances shown to exist.

Later that same day, the jury returned a verdict in favor of Defendant, answering "No" to the issue of whether Plaintiff was injured by the negligence of Defendant. Plaintiff timely appealed.

On appeal, Plaintiff challenges the trial court's jury instructions in two respects: first, he argues that the court erred in refusing to instruct that Defendant violated N.C. Gen. Stat. § 20-146(d) by failing to keep his vehicle in his lane of travel, and that such violation constitutes negligence *per se*; second, he contends that the court erred by giving a sudden emergency instruction. For the following reasons, we agree and thus hold that Plaintiff is entitled to a new trial.

[1] " 'When a party's requested jury instruction is correct and supported by the evidence, the trial court is required to give the instruction.' " *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 56, 607 S.E.2d 286, 291 (2005) (quoting *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 464, 553 S.E.2d 431, 441 (2001), *disc. review denied*, 356 N.C. 315, 571 S.E.2d 220 (2002)). For an appeal on the trial court's failure to give a requested instruction to prevail, a party must establish the following elements: (1) the requested instruction was a correct statement of law; (2) the

requested instruction was supported by the evidence; (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested; and (4) such failure likely misled the jury. *Liborio v. King*, 150 N.C. App. 531, 564 S.E.2d 272, *disc. review denied*, 356 N.C. 304, 570 S.E.2d 726 (2002). "The instructions must be based on evidence, which when viewed in the light most favorable to the proponent, will support a reasonable inference of each essential element of the claim or defense asserted." *Anderson v. Austin*, 115 N.C. App. 134, 136, 443 S.E.2d 737, 739 (citations omitted), *disc. review denied*, 338 N.C. 514, 452 S.E.2d 806 (1994). " 'When a party aptly tenders a written request for a specific instruction which is correct in itself and supported by evidence, the failure of the court to give the instruction, at least in substance, is error.' " *Maglione*, 168 N.C. App. at 56, 607 S.E.2d at 291 (quoting *Faeber v. E.C.T. Corp.*, 16 N.C. App. 429, 430, 192 S.E.2d 1, 2 (1972)). The trial court need not give the exact instruction as requested, and failure to give the requested instruction is not error so long as "the substance of the requested instruction" is given. *Parker v. Barefoot*, 130 N.C. App. 18, 20, 502 S.E.2d 42, 44, *disc. review denied*, 349 N.C. 362, 525 S.E.2d 455 (1998), *rev'd on other grounds*, 351 N.C. 40, 519 S.E.2d 315 (1999).

In this case, the trial judge denied Plaintiff's request that he give an instruction on the lane violation as negligence *per se*. The trial court reasoned that the instruction would not be proper because Defendant did not intentionally drive his car into Plaintiff's lane; instead, he skidded out of control into the left lane. On appeal, Defendant argues that the trial court was correct because all of the evidence presented in the case establishes that Defendant did not "drive" his car across the center line into Plaintiff's lane of travel. We disagree.

Section 20-146 of the North Carolina General Statutes provides in pertinent part that:

(d) Whenever any street has been divided into two or more clearly marked lanes for traffic, the following rules in addition to all others consistent herewith shall apply.

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

N.C. Gen. Stat. § 20-146(d)(1) (2001). Plaintiff is correct that a violation of this statute constitutes negligence *per se* and that, if negligence resulting from such violation proximately causes injury, "liability results." *Stephens v. Southern Oil Co.*, 259 N.C. 456, 458, 131 S.E.2d 39, 41 (1963). *See also Anderson v. Webb*, 267 N.C. 745, 749, 148 S.E.2d 846, 849 (1966) ("When a plaintiff suing to recover damages for injuries sustained in a collision offers evidence tending to show that the collision occurred when the defendant was driving to his left of the center of the highway, such evidence makes out a *prima facie* case of actionable negligence").

Here, Plaintiff established a *prima facie* case of negligence in that all of the evidence showed that Defendant crossed over the center line and struck Plaintiff in the opposing lane of traffic. The requested instruction regarding violation of section 20-146(d) was therefore a correct statement of the law supported by the evidence, and the trial court erred in refusing to give such instruction. It is irrelevant that Defendant did not *intentionally* drive his car from his lane of travel across the center line. Rather, the crucial inquiry is whether Defendant's actions culminating in the accident were *negligent*. On this question, there was evidence from which a jury could find that Defendant was negligent in the operation of his vehicle *before* he lost control, and that these negligent acts in fact caused him to lose control of the vehicle. For example, there was evidence from which the jury could find that Defendant was on notice that icy conditions prevailed on the road. In addition, there was evidence from which the jury could find that Defendant was traveling at an unsafe speed for the road conditions at the time. Thus, a reasonable juror could find that Defendant drove his car in a negligent manner in his own lane of travel, culminating in a loss of control of the vehicle which, in turn, caused him to cross the center line and collide with Plaintiff's car.

"However, a defendant may escape liability by showing that he was on the wrong side of the road from a cause other than his own negligence." *Anderson*, 267 N.C. at 749, 148 S.E.2d at 849. Thus, Defendant could rebut the presumption of negligence created by a violation of section 20-146(d) by presenting evidence that he was on the wrong side of the road from a cause other than his own negligence. *See Nationwide Mut. Ins. Co. v. Chantos*, 298 N.C. 246, 258 S.E.2d 334 (1979). Defendant was also free to request an additional jury instruction informing the jury that if it found that Defendant's violation of section 20-146(d) was not caused by his negligence, the

presumption of negligence was rebutted. *See* N.C.P.I. Civ. 204.09, n.3 (motor veh. vol. 1998).

Moreover, while we believe the negligence charge given by the trial judge was very thorough, we are not persuaded by Defendant's further argument that the court's charge to the jury, "[i]n its totality, . . . fairly represented all of the material issues." Although the judge instructed the jury that every person is under a duty to follow standards of conduct established by a safety statute and that a person's failure to do so is negligence in and of itself, the only specific safety statute on which he then charged the jury was N.C. Gen. Stat. § 20-141 (a), that "[n]o person shall drive a vehicle on a highway . . . at a speed greater than is reasonable and prudent under the conditions then existing." The jury was thus limited to finding negligence on the basis of Defendant's violation of a safety statute if it found that he was driving his vehicle at a speed greater than was reasonable and prudent at the time. This charge did not permit the jury to consider, alternatively, that Defendant was negligent because of actions that caused his vehicle to cross the center line and collide with Plaintiff's car in Plaintiff's lane of travel. Because there was evidence to support an instruction on a violation of section 20-146(d), the trial court erred in denying Plaintiff's request that such instruction be given.

**[2]** Plaintiff next assigns error to the trial court's instruction to the jury on the doctrine of sudden emergency, arguing that the evidence was insufficient to support this instruction. We agree.

"The sudden emergency doctrine provides that one confronted with an emergency is not liable for an injury resulting from his acting as a reasonable man might act in such an emergency." *Campbell v. McIlwain*, 163 N.C. App. 553, 556, 593 S.E.2d 799, 802 (2004). Two elements must be satisfied before the sudden emergency doctrine applies: (1) an emergency situation must exist requiring immediate action to avoid injury, and (2) the emergency must not have been created by the negligence of the party seeking the protection of the doctrine. *Allen v. Efird*, 123 N.C. App. 701, 474 S.E.2d 141 (1996), *disc. review denied*, 345 N.C. 639, 483 S.E.2d 702 (1997).

As for the first element of the sudden emergency doctrine, "[a]n 'emergency situation' has been defined by our courts as that which 'compels [defendant] to act <u>instantly</u> to avoid a collision or injury[.]' " *Reed v. Abrahamson*, 108 N.C. App. 301, 308, 423 S.E.2d 491, 495 (1992) (quoting *Schaefer v. Wickstead*, 88 N.C. App. 468, 471, 363 S.E.2d 653, 655 (1988)), *cert. denied*, 333 N.C. 463, 427 S.E.2d 624

(1993). The second element prohibits application of this doctrine "where the sudden emergency was caused, at least in part, by defendant's negligence in failing to maintain the proper lookout or speed in light of the roadway conditions at the time." *Allen*, 123 N.C. App. at 703, 474 S.E.2d at 143. Moreover, "[a] sudden emergency instruction is improper absent evidence of a sudden *and unforeseeable* change in conditions to which the driver must respond to avoid injury." *Id.* (emphasis added).

In this case, Defendant argues that he was entitled to the sudden emergency instruction because (1) he had not encountered any slipping or sliding of his wheels during the four miles he drove on Jones Ferry Road before the accident occurred, (2) he had not encountered or observed any ice, hidden or obvious, in that distance, (3) he had not lost control of his car before the accident, (4) the "nature and character of the roadway conditions changed abruptly immediately" in the area where the accident occurred, and (5) he slid on ice that he had not observed before hitting it "almost immediately" upon seeing a vehicle in front of him slide. We are not persuaded by Defendant's argument.

All of the emergency and law enforcement witnesses described the existence of icy patches in some areas of southbound Jones Ferry Road in the four miles traveled by Defendant before the accident occurred. Although Defendant denied that he observed or otherwise became aware of those icy areas, he conceded that (1) he saw the snow on the roadway; (2) he observed tracks of cars that had traveled through the snow before he came along; (3) he knew from his previous driving experience that "when snow gets traveled on[,] it packs down[] [and] when it gets packed down, it can turn to ice[;]" and (4) he acknowledged that he knew as he drove on the morning of 9 January 2001 that the snowy areas he saw with tire tracks through them "had possibly been compacted down into ice." These admissions of Defendant establish that he was on notice of a potential encounter with ice on the road, and that hitting ice as he drove was foreseeable. For this reason, the evidence does not sustain Defendant's contention that he was confronted with a sudden and unforeseeable change in road conditions, and that he was thereby called upon to respond to a sudden emergency.

This Court's decision in *Banks v. McGee*, 124 N.C. App. 32, 475 S.E.2d 733 (1996), is particularly persuasive here. In *Banks*, the defendant lost control of her car after hitting a puddle of water. When she hit the water, her car started hydroplaning and skidded into the

other lane, colliding with the plaintiffs' car. Defendant testified she was aware that it was raining, the roads were slick, and water tended to puddle in places on the road she was traveling. She claimed that she was entitled to a jury instruction on sudden emergency, however, because she did not see the puddle before she hit it and, thus, she was confronted with an unanticipated and sudden situation. The trial court agreed and gave a sudden emergency instruction. The jury answered the negligence issue in the defendant's favor.

On appeal, this Court framed the issue thusly: "[W]hether the defendant is entitled to a sudden emergency instruction when she loses control of her automobile on a rainy day after striking a puddle of water on a road when she is aware that water tends to puddle on that road." *Id.* at 33-34, 475 S.E.2d at 734. Noting that the evidence of the defendant's knowledge of the road conditions was undisputed, this Court held that such evidence "simply cannot support a conclusion that the defendant's contact with the puddle of water was an unanticipated event. . . . *The question is not what she saw but instead what a reasonable person in her situation should have seen." Id.* (emphasis added). *See also Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 239, 311 S.E.2d 559, 568 (1984) ("The crucial question in determining the applicability of the sudden emergency doctrine is . . . whether [defendant], when approaching the stopped vehicle, saw *or by the exercise of due care should have seen* that he was approaching a zone of danger.") (emphasis added).

Because Defendant in the case *sub judice* knew or in the exercise of reasonable care should have known that the snow on Jones Ferry Road could have become ice in some areas, the mere fact that he did not see the icy patch he hit in advance of hitting it is insufficient to establish that he was thereby confronted with a sudden emergency. The trial court thus erred in instructing the jury on sudden emergency.

We agree with Defendant, however, that Plaintiff is entitled to a new trial only if the trial court's error in giving a sudden emergency instruction was prejudicial, that is, that it probably influenced the jury's verdict. *See* N.C. Gen. Stat. § 1A-1, Rule 61 (2005); *See Word v. Jones ex rel. Moore*, 350 N.C. 557, 565, 516 S.E.2d 144, 148 (1999) ("erroneous jury instructions are not grounds for granting a new trial unless the error affected a substantial right."). The instructions of the trial judge in this case made it clear that, in considering whether Defendant failed to keep a proper lookout, failed to keep his vehicle

under proper control, or drove too fast for conditions, the jury should take the icy and snowy conditions into account. In fact, the charge plainly permitted the jury to find that the skidding of Defendant's car was evidence of negligence solely because there was ice or snow on the roadway. Preceding these instructions, however, was the court's sudden emergency instruction which allowed the jury to conclude that even if Defendant was negligent in the operation of his car up to the point that he hit the ice, he was not liable for the accident because the ice that caused him to lose control of his car constituted sudden and unforeseeable conditions. Under these circumstances, we are unable to say as a matter of law that the jury was not influenced in its decision by the court's sudden emergency instruction. Plaintiff, therefore, is entitled to a new trial. *Accord, Pinckney v. Baker*, 130 N.C. App. 670, 674, 504 S.E.2d 99, 102 (1998) (" '[w]hen a trial judge instructs the jury on an issue not raised by the evidence, a new trial is required") (quoting *Giles v. Smith*, 112 N.C. App. 508, 512, 435 S.E.2d 832, 834 (1993)).

NEW TRIAL.

Judges McGEE and HUNTER concur.