RODNEY J. BUTTERFIELD Plaintiff,
v.
ROBERT M. WILLIAMSON, and BLUE RIDGE SPORTS CARS, Inc., a North Carolina corporation, and STRATEGIC WORKS SYSTEMS, Inc., a North Carolina corporation, Defendants.
No. COA07-1488
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Peter R. Henry for plaintiff-appellee.
Steven J. Allen for defendants-appellants Robert M. Williamson and Strategic Works Systems.
WYNN, Judge.
"The court should deny motions for directed verdict and judgment notwithstanding the verdict when it finds any evidence more than a scintilla to support plaintiff's prima facie case in all its constituent elements."[1] Here, Defendants argue the trial court erred by denying their motions for directed verdict, JNOV, and post-trial motions because there was no evidence that a contract existed between the parties. Because the record shows more than a scintilla of evidence to support Plaintiff's breach of contract claim, we affirm.
The evidence presented at trial tended to show that sometime during 1998, Plaintiff Rodney Butterfield painted and restored an automobile for Defendant Robert Williamson. At that time, Mr. Butterfield was a resident of North Carolina and a citizen of Great Britain, and Mr. Williamson was a principal executive in Strategic Works Systems, Inc. Based upon the favorable quality of the restoration work, Mr. Butterfield and Mr. Williamson agreed to form a corporation, Blue Ridge Sports Cars, Inc., for the purpose of automobile restoration. In a letter to Mr. Butterfield dated 20 November 1998, Mr. Williamson stated:
I would like you to consider the formal incorporation of `Blue Ridge Sports Cars' in North Carolina with Strategic Works Systems, Inc. and or me, Robert M. Williamson, as 80 percent owner and yourself as 20 percent owner. You will be paid a salary plus commission based on revenues or profits.
In response to the letter, Mr. Butterfield incorporated Blue Ridge Sports Cars on 8 April 1999. On 15 September 1999, Strategic Works submitted an H-1B visa petition to the Immigration and Naturalization Services to retain Mr. Butterfield in the United States for the purpose of serving as a Blue Ridge Sports Cars employee. The visa petition, signed by Mr. Williamson as president of Strategic Works, listed Mr. Butterfield's position as "Chief Operating Officer & Director of Engineering" and his salary as approximately $1,000 per week. Mr. Butterfield testified at trial that he shipped all of his restoration equipment from Europe, at a great expense, and began working four days a week for twelve hours per day in Burnsville, where the paint ovens were located. Mr. Williamson and Strategic Works provided numerous loans to Blue Ridge Sports Cars, and Mr. Williamson testified that by 2002, he had given Mr. Butterfield over $50,000 in loans. Mr. Butterfield testified that Mr. Williamson was as "involved as he could be," but often traveled and later was distracted by his divorce. It is unclear from the record how much business Blue Ridge Sports Cars received from 1999 to 2002, but Mr. Butterfield testified that during that time "[w]e undertook customer restoration work, primarily."
In 2001, Mr. Williamson, as president of Strategic Works, renewed Mr. Butterfield's visa for another three years, stating that Mr. Butterfield would continue to be a salaried employee and receive $50,000 annually. During or before the year 2002, Mr. Williamson became withdrawn from the operations of Blue Ridge Sports Cars. Mr. Butterfield testified that although Mr. Williamson was still interested in the company, Mr. Williamson had little time or funding to offer. By 2003, Mr. Butterfield gave up trying to run Blue Ridge Sports Cars "without a proper building[,]" and the company became inactive.
Mr. Butterfield testified that although he ensured that all other workers were paid, "the company has never been able to pay my salary." Thus, on 30 December 2005, Mr. Butterfield brought an action against Blue Ridge Sports Cars, Mr. Williamson, andStrategic Works, alleging "moneys owed" and fraud in the inducement.
Prior to trial, by order filed 14 February 2007, the trial court granted Mr. Williamson's and Strategic Works's (collectively "Defendants") motion for summary judgment for Mr. Butterfield's fraud in the inducement claim, but denied summary judgment on the "moneys owed" claim. Additionally, the trial court granted Defendants' motion in limine to exclude Mr. Butterfield's testimony regarding corporate records that he failed to produce following an order to compel.
At the jury trial, Defendants moved for a directed verdict at the close of Mr. Butterfield's evidence and at the close of all evidence; both motions were denied. Pursuant to a jury verdict finding that Defendants had breached their contract with Mr. Butterfield to "mutually engage in the business of automobile restoration," the trial court entered judgment on 4 April 2007 in favor of Mr. Butterfield and ordered Defendants to pay him $147,200. Following the jury's verdict, Defendants moved for judgment notwithstanding the verdict (JNOV), which was denied. Defendants also made post-trial motions for JNOV under Rule 50(b) and for a new trial pursuant to Rule 59(a), which were denied by order filed 12 June 2007.
On appeal, Defendants argue the trial court erred by: (I) failing to grant summary judgment on the "moneys owed" claim; (II) denying their motions for directed verdict, motion for JNOV, post-trial motions, and also argue that there was insufficient evidenceto support the jury's verdict; (III) improperly admitting Mr. Butterfield's testimony concerning corporate records; and (IV) failing to give the requested jury instruction on the non-existence of certain corporate records and the requested jury instruction on the spoliation of evidence regarding the incorporation questionnaire.

I.
Defendants first argue the trial court erred by failing to grant summary judgment on the "moneys owed" claim. However, our Supreme Court has stated that "the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits." Harris v. Walden, 314 N.C. 284, 286, 333 S.E. 2d 254, 256 (1985). Here, Defendants' motion for summary judgment was denied and a final judgment was rendered after a jury trial on the merits. Accordingly, the denial of Defendants' motion for summary judgment is not properly before us on appeal, and we cannot consider it.

II.
Defendants next argue the trial court erred by denying their motions for directed verdict, motion for JNOV, and post-trial motions under Rule 50(b) and for a new trial under Rule 59(a). Additionally, Defendants argue there was insufficient evidence to support the jury's verdict. We disagree.
"A JNOV motion pursuant to Rule 50 seeks entry of judgment in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict actually returned by the jury." Streeter v. Cotton, 133 N.C. App. 80, 82, 514 S.E.2d 539, 541 (1999) (citations omitted). In determining whether to grant a motion for directed verdict or a motion for JNOV, "the court must consider the evidence in the light most favorable to the nonmoving party[.]" Boyd v. L.G. DeWitt Trucking Co., Inc., 103 N.C. App. 396, 401, 405 S.E.2d 914, 918 (citation omitted), disc. review denied, 330 N.C. 193, 412 S.E.2d 53 (1991). "The court should deny motions for directed verdict and judgment notwithstanding the verdict when it finds any evidence more than a scintilla to support plaintiff's prima facie case in all its constituent elements." Clark v. Moore, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983) (citation omitted). Concomitant with a JNOV motion, a party may move for new trial, a motion which is "addressed to the discretion of the trial court and is strictly limited to whether the record affirmatively shows a manifest abuse of discretion by the trial judge." Streeter, 133 N.C. App. at 82, 514 S.E.2d at 541-42 (quotations and citations omitted).
"The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citation omitted). Here, Defendants argue that there was no evidence that a valid contract existed between the parties.
We have previously explained that "[a]n implied contract is valid and enforceable as if it were express or written." Snyder v. Freeman, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980). "The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Id. at 218, 266 S.E.2d at 602. "There is no meeting of the minds, and, therefore, no contract, when in the contemplation of both parties . . . something remains to be done to establish contract relations." Parker v. Glosson, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). However, "[w]hether mutual assent is established and whether a contract was intended between parties are questions for the trier of fact." Snyder, 300 N.C. at 217, 266 S.E.2d at 602.
In this case, we find that there was more than a scintilla of evidence to support Mr. Butterfield's breach of contract claim. The evidence presented at trial tended to show that Mr. Butterfield and Mr. Williamson engaged in a discussion about forming a corporation for the purpose of automobile restoration. Subsequently, on 20 November 1998, Mr. Williamson sent Mr. Butterfield a letter asking him to consider "the formal incorporation of `Blue Ridge Sports Cars,'" with Mr. Williamson as eighty-percent owner and Mr. Butterfield as twenty-percent owner. The letter also stated that Mr. Butterfield would "be paid a salary plus commission based on revenues or profits."
Additionally, in 1999 and 2002, Mr. Williamson signed visa petitions as president of Strategic Works to allow Mr. Butterfield to remain in the United States as an employee. The visa petition stated that Mr. Butterfield was to receive a salary of $50,000 annually. Although Mr. Butterfield stated at trial that "the agreement was left in no man's land," we find that the two visapetitions, combined with Mr. Williamson's 20 November 1998 letter and Mr. Butterfield's testimony at trial, presented sufficient evidence of the parties' mutual intent to engage in the business of automobile restoration. Moreover, the record shows Mr. Williamson failed to make the expected payments and Mr. Butterfield had trouble reaching him to discuss the business. In considering the evidence in the light most favorable to Mr. Butterfield, we conclude that the trial court did not err by denying Defendants' motion for directed verdict, JNOV, or post-trial Rule 50(b) motion. Additionally, we conclude that the trial court did not abuse its discretion by denying Defendants' motion for a new trial.

III.
Defendants next contend the trial court erred by improperly admitting Mr. Butterfield's testimony concerning corporate records that Mr. Butterfield failed to produce. We disagree.
"Admission of evidence is addressed to the sound discretion of the trial court and may be disturbed on appeal only where an abuse of such discretion is clearly shown."Gibbs v. Mayo, 162 N.C. App. 549, 561, 591 S.E.2d 905, 913 (citation omitted), disc. review denied, 358 N.C. 543, 599 S.E.2d 45 (2004). Under an abuse of discretion standard, we reverse a trial court's decision "only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." Id. (citation and quotation omitted).
Here, Mr. Butterfield failed to comply with a pre-trial discovery order compelling him to produce the corporate records of Blue Ridge Sports Cars. Before trial, the trial court granted Defendants' motion in limine to exclude testimony regarding records that Mr. Butterfield failed to produce. At trial, Defendants objected to the following testimony by Mr. Butterfield on direct examination: "[Mr. Williamson]'s been on the company annual returns, and its banking application, and its bank accounts, and other routine paperwork . . . [and] [h]e also gets all the mail from the credit card companies." Defendants also objected to Mr. Butterfield's testimony on cross-examination that "[t]hese loans are recognized in the books of the company." The trial court overruled Defendants' objections and also did not allow a continuing objection.
We have held that "[a] trial court's ruling on a motion in limine is preliminary and is subject to change depending on the actual evidence offered at trial. The granting or denying of a motion in limine is not appealable." Gregory v. Kilbride, 150 N.C. App. 601, 611, 565 S.E.2d 685, 693 (2002), disc. review denied, 357 N.C. 164, 580 S.E.2d 365 (2003). Thus, we review only whether the trial court abused its discretion by admitting Mr. Butterfield's testimony at trial.
Although Mr. Butterfield's testimony may have made Mr. Williamson appear more involved in Blue Ridge Sports Cars, as Defendants argue, we cannot conclude that the trial court's admission of such testimony was "so arbitrary that it could not have been the result of a reasoned decision." Gibbs, 162 N.C. App. at 561, 591 S.E.2d at 913. This assignment of error is overruled.

IV.
Lastly, Defendants contend the trial court erred by failing to instruct the jury as to the nonexistence of certain corporate records and as to the spoliation of evidence, namely, the incorporation questionnaire. We disagree.
When a party's requested jury instruction is correct and supported by the evidence, the trial court is required to give the instruction. For an appeal on the trial court's failure to give a requested instruction to prevail, a party must establish the following elements: (1) the requested instruction was a correct statement of law; (2) the requested instruction was supported by the evidence; (3) the instruction given, considered in its entirety, failed to encompass the substance of the law requested; and (4) such failure likely misled the jury.
Sobczak v. Vorholt, 181 N.C. App. 629, 635-36, 640 S.E.2d 805, 810 (2007) (quotations and citations omitted).
Defendants first argue that because Mr. Butterfield did not produce certain corporate documents, the jury should have been instructed that "no such documents exist." Although the evidence and Mr. Butterfield's own testimony support the fact that he did not produce certain corporate documents, Defendants' requested jury instruction was not a correct statement of law, but rather a statement of fact. See id. at 635, 640 S.E.2d at 810. Accordingly, the trial court did not err by failing to give the requested jury instruction.
Defendants also argue the trial court erred by refusing to give the requested spoliation instruction regarding the incorporation questionnaire. We disagree. Regarding a spoliation of evidence instruction, this Court has explained that "when the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized inquiry, a fact finder may reasonably infer that the party probably did so because the records would harm its case." Arndt v. First Union Nat. Bank, 170 N.C. App. 518, 527, 613 S.E.2d 274, 281 (2005) (citation and quotation omitted).
Here, the record contains two versions of an incorporation questionnaire completed by Hugh Key, Mr. Butterfield's attorney. One version states that the "first month employees will be paid" is "Sep 98," while the other version appears to have overwritten "Sep 98" with "Sep 99." Based on the change in the year, Defendants requested the following jury instruction, in relevant part:
Evidence has been received which tends to show that an incorporation questionnaire was in the exclusive possession of Mr. Butterfield and has been corrupted even though Mr. Butterfield was aware of Mr. Williamson's and Strategic Works Systems's defense that Mr. Butterfield had begun forming Blue Ridge Sports Cars before he met Mr. Williamson. From this you may infer, though you are not compelled to [], that the incorporation questionnaire would be damaging to Mr. Butterfield in its original condition.
Although Defendants' requested jury instruction was a correct statement of law and was supported by the evidence, Sobczak, 181 N.C. App. at 636, 640 S.E.2d at 810, we cannot conclude that the jury was misled by the failure to give the instruction. At trial, Defendants' attorney thoroughly questioned Mr. Butterfield regarding the change in year on the incorporation form. When asked whether he could explain why the year was changed, Mr. Butterfield stated, "I have no explanation for it." Additionally, Mr. Butterfield stated that he did not direct Larry Schwartz, his accountant, or Mr. Key to change the date and "certainly didn't intend anybody to change that date." Because Defendants presented their theory that Mr. Butterfield incorporated Blue Ridge Sports Cars before meeting Mr. Williamson during trial, we cannot conclude that the jury was misled by the failure to give the requested instruction. Thus, we affirm the trial court's ruling on the jury instructions.
Affirmed.
Judges ELMORE and ARROWOOD concur.
Report per Rule 30(e).
NOTES
[1] Clark v. Moore, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983) (citation omitted).